## COMMISSIONER OF INTERNAL REVENUE v. ROOSEVELT & SON INV. FUND.

### No. 273.

Circuit Court of Appeals, Second Circuit.

May 3, 1937.

James W. Morris, Asst. Atty. Gen., and Sewall Key and F. E. Youngman, Sp. Assts. to Atty. Gen., for petitioner.

Roland L. Redmond, Leslie D. Dawson, and Allin H. Pierce, all of New York City, for respondent.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The partnership of Roosevelt & Son was originally formed in 1797. For years it has been dealing in investment securities. Its principal business has been to care for other people's money, acting as trustee un-

der wills and deeds of trust, and serving as custodian. In order to render more efficient service, an Investment Fund was established. A form of trust was chosen to make the tax of each participant as nearly as possible identical with what he would have paid as individual owner of a proportionate share of the securities held by the respondent. Roosevelt & Son Investment Fund was formed pursuant to an agreement designated "Investment Trust Indenture," dated April 29, 1927, by general partners of the firm of Roosevelt & Son, who are called "managers" in the indenture; a bank was named as trustee and the registered holders of participation certificates as beneficiaries. The rights and obligations of the parties to the indenture are fixed and determined by its provisions and the fund has been administered in accordance with its terms.

On March 15, 1928, the trust filed with the Collector of Internal Revenue for the Second District "a fiduciary return of income" on Form 1041, for the year 1927. On December 24, 1928, the managers wrote to the petitioner asking a ruling as to whether a return for the year 1928 should be filed upon the form provided for use by a trustee or that provided for corporations. March 15, 1929, the managers again filed a return for the year 1928 on Form 1041. On March 30, 1929, petitioner wrote the trust managers stating that it was an association within the taxing statute. A notice was mailed or delivered to each participant stating that he should report as "dividends" the amount shown as the total income derived from his ownership of the fund certificate. March 15, 1930, the managers filed a fiduciary return on Form 1041 for the year 1929 as they had in previous years. July 23, 1930, the petitioner was advised by his general counsel of a change in interpretation, and it was recommended that respondent be notified that it was a strict trust. October 17, 1930, petitioner notified respondent that upon reconsideration it should be regarded as a strict trust for the years 1927 and 1928 and directed the respondent to disregard proposed additional taxes for those years. October 28, 1930, the respondent requested a ruling to cover the years 1929 and 1930 and received a reply November 30, 1930, that if the same conditions obtained as during the years 1927 and 1928, the fund had a taxable status as a trust.

On December 21, 1929, the managers of the fund had set aside a reserve, to wit, $107,142.80, to cover the payment of income taxes which might be held to be due by the Fund for the year 1929. The fiduciary return of income made for the year 1929 filed March 15, 1930, showed a total amount of dividends of $100,736.02, instead of $207,878.83, the difference representing the above-mentioned reserve. After receipt of the letter of November 30, the managers of the fund credited back this reserve to the income of the fund. December 12, 1930, respondent notified the certificate holders to include in their amended returns for the years 1928 and 1929 their proportionate part of the reserve. Amended returns in accordance with these instructions were filed and income taxes paid, though it seems that not all the beneficiaries did so. December 17, 1930, respondent filed an amended return for the year 1929 increasing the total of the reported dividends by the amount of the reserve and in it disclosed the names of the participating certificate holders for 1929 and their respective proportions of the total income for that year. The report detailed the fund's bonds, notes, bank deposits, and dividends received in stock. March 8, 1934, petitioner informed respondent that the ruling of November 30, 1930, had been revoked. March 9, 1934, it mailed the notice of deficiency to respondent, stating that the respondent was held to be an association and therefore taxable as a corporation under section 275 (c) of the Revenue Act of 1928 [45 Stat. 791, 856]. The deficiency was expunged by the Board on the ground that under section 275 (a) of the 1928 Act the period of limitation had expired (34 B.T.A. 38).

Section 275 (c) provides: "If a corporation makes no return of the tax imposed by this title, but each of the shareholders includes in his return his distributive share of the net income of the corporation, then the tax of the corporation shall be assessed within four years after the last date on which any such shareholder's return was filed."

Section 275 (a) requires that income tax under this title (45 Stat. 791, 856) shall be assessed within two years after the return is filed and that no proceeding in court without assessment for the collection of taxes shall be begun after the expiration of such period. It is clear that if the return or amended return filed by the respondent for 1929 was a return under the law, sec-

tion 275 (a) is applicable and the notice of deficiency was too late.

But it is argued by petitioner that the information return filed was that of a trust and not of a corporation; in other words, that no return was filed for the tax sought to be imposed. A return prepared for the fund on the form for a corporation income tax return, which was stamped "substitute return" and also bearing an assessment stamp indicating the amount of the alleged deficiency in tax, involved in this proceeding, was offered in evidence. Across this document were the words, "Original 1041 return attached." This was prepared by the petitioner's auditors on the basis of a revenue agent's report and there is no evidence that it was ever filed in the office of any Collector of Internal Revenue. The Board found that the return on Form 1041 which respondent filed March 15, 1930, contained all the information which would have been contained in a return filed as a corporate return; but there was no computation of taxes. It held it was sufficient to start running the two-year statute of limitations provided by section 275 (a). It further found that the substitute return must have been prepared and filed, if at all, in the office of the Commissioner more than two years prior to the issuance of the notice of deficiency.

■ Our jurisdiction to review decisions of the Board of Tax Appeals is defined by the provisions of the Revenue Act of 1926 [44 Stat. 9, 109, 110] §§ 1001–1003, as amended. Section 1002 of this act as amended by section 519 of the Revenue Act of 1934 [48 Stat. 680, 760, 26 U.S.C.A. § 641 (b)] provides: "Except as provided in subdivision (b) [2] [relating to designation of venue by stipulation], such decision may be reviewed by the Circuit Court of Appeals for the circuit in which is located the collector's office to which was made the return of the tax in respect of which the liability arises or, if no return was made, then by the United States Court of Appeals for the District of Columbia." We have no jurisdiction to review a decision of the Board where the facts do not bring the case within the provisions of this statute. Mass. Fire & Marine Ins. Co. v. Com'r, 42 F.(2d) 189 (C.C.A.2); Nash-Breyer Motor Co. v. Com'r (C.C.A.) 42 F. (2d) 192, affirmed 283 U.S. 483, 51 S.Ct. 549, 75 L.Ed. 1180; Wistar v. Com'r (C.

C.A.) 42 F.(2d) 192; Grain King Mfg. Co. v. Com'r (C.C.A.) 47 F.(2d) 608.

■ The petitioner has invoked the jurisdiction of the court by alleging that the respondent filed a fiduciary information return for the year 1929 with the Collector of Internal Revenue for the Second District of New York and the office of the collector is located within this judicial circuit. Thus the representation is made of jurisdiction by reason of the return filed by respondent on Form 1041. But if these representations be correct, the alleged deficiency is clearly barred by the limitation provisions of section 275 (a). If the petitioner concedes that a proper return was filed, section 275 (c) of the statute becomes inapplicable, for that section by its terms applies only where no return is made. The petitioner may not assume two inconsistent positions. He has invoked the court's jurisdiction with the representation that a return of tax was filed in the New York collector's office and now argues for a reversal of the Board's decision on the ground that the alleged deficiency is not barred because no return of the tax was filed by the respondent.

■ The truth is that the information return filed by the respondent was not the return of a tax at all but merely detailed the information with which the tax upon the beneficiaries could be computed. It is immaterial in this respect that such a return has been held to prevent the imposition of a penalty [Hartford-Connecticut Trust Co. v. Bowers, 34 F.(2d) 128 (C.C.A. 2)], or that it contained all the facts by which a computation of the tax could be arrived at. Section 275 (c) is explicit in its reference to the "return of the tax imposed by this title." That means just what it says and may not be extended to include an information return which in fact is no tax return at all.

■ An absence of jurisdiction is a corollary to what we have just said. If there was no return within section 275(c), which pertains to the tax herein sought to be assessed, there certainly was no "return of the tax in respect of which the liability arises." Consequently the prerequisite to jurisdiction prescribed by section 1002, as amended, is not fulfilled. It cannot be that there was a return for one purpose but not for another.

The petition is dismissed for lack of jurisdiction.