**UNITED STATES v. NATIONAL CITY
BANK OF NEW YORK et al.**

District Court, S. D. New York.
July 22, 1937.

Supplemental Opinion Nov. 27, 1937.

Lamar Hardy, U. S. Atty., of New York City (Irvin C. Rutter, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Taylor, Blanc, Capron & Marsh, of New York City (Russell L. Bradford and George H. Craven, both of New York City, of counsel), for National City Bank of New York.

F. L. Crocker and Dunnington, Bartholow & Miller, all of New York City, for defendant Gertrude Vanderbilt Whitney.

PATTERSON, District Judge.

The suit is one in equity by the United States against National City Bank and Gertrude Vanderbilt Whitney to collect income tax. The case comes up on motion by the defendants to dismiss the amended bill for insufficiency on its face, also on counter motion by the plaintiff to strike the answers for insufficiency. The suit was commenced on March 14, 1931.

The facts shown by the amended bill are these: Cornelius Vanderbilt died in 1899. By his will he devised real estate at Fifth avenue and Fifty-Seventh street to his wife, Alice G. Vanderbilt, for life, with con-

tingent remainders in fee simple. The contingent remainders were: On the wife's death to such of two named sons as his wife should appoint by will, in default of appointment to the elder of the two named sons living at the wife's death, and in case neither of the sons should be then living to his eldest daughter then living, with further remainders over to grandchildren living at the wife's death or to the residuary estate in case neither of said sons nor any daughter should survive the wife.

In 1925 the widow as life tenant brought a proceeding in the New York Supreme Court for a judicial sale of the real estate. The New York Real Property Law, §§ 67–71, Consol.Laws, c. 50, under which the proceeding was brought, provides that in cases where real estate has been devised for life with remainders to persons who are unascertainable during the life tenancy, the court may order a sale of the real estate if it is satisfied that a sale is for the best interests of all concerned and if there is consent by all parties prospectively interested who are not under disability; the sale is to be made by a referee; the proceeds of sale are to be paid to a trust company or individual appointed by the court "who shall thereby become trustee or trustees for such life tenant and remaindermen," charged with investing the proceeds, paying the net income to the life tenant for life, and finally distributing the principal to the remaindermen.

In due course the court ordered a sale, and the referee appointed made an agreement to sell the real estate for $7,100,000. The prospective purchaser paid $500,000 of the purchase price to the referee, who turned that sum over to National City Bank on January 15, 1926; that bank having already been appointed trustee of the proceeds of sale by the court. The purchaser later defaulted and the $500,000 was declared forfeited. Further proceedings and negotiations resulted in the sale and conveyance of the real estate by the referee to a new purchaser for $6,600,000, and the net proceeds of this sale, $6,429,142.47, were turned over to National City Bank as trustee; $500,000 on December 20, 1926, and the balance on February 1, 1927.

The value of the real estate on March 1, 1913, was $3,641,304, a sum greater than the value in 1899, when the testator died.

The life tenant died on April 22, 1934. Both of the sons named in the remainders having predeceased her, the property passed by the terms of the will to the eldest daughter living at the life tenant's death, Gertrude Vanderbilt Whitney. National City Bank accordingly in due course turned over the capital of the fund to the extent of about $5,000,000 to Gertrude Vanderbilt Whitney, reserving about $1,000,000 for possible taxes.

On the foregoing facts the plaintiff charges that there was a gain in 1926 of $500,000, being the amount of the forfeited deposit on the abortive sale, and that there was a gain in 1927 of $2,787,838.47, being the difference between the value of the real estate on March 1, 1913, and the net proceeds of the completed sale; that such gains were income taxable in those years against the referee or against the life tenant as trustee or fiduciary of the real estate or against National City Bank as trustee, fiduciary, or transferee of the proceeds of sale; that no one has ever reported the gains for tax or paid any tax on them. The first cause of action in the amended bill is for $116,365, the tax at normal and surtax rates on the alleged $500,000 gain in 1926. The second cause of action is for $688,324.61; the tax at normal and surtax rates on the alleged $2,787,838.47 gain in 1927. The prayer for relief is that the payments received by National City Bank be impressed with a trust in favor of the plaintiff as a creditor of the referee or of the life tenant; that National City Bank account to the plaintiff for enough money to pay the tax; that the funds later turned over to Gertrude Vanderbilt Whitney be impressed with a trust in the plaintiff's favor as a creditor of National City Bank, in an amount sufficient to discharge the plaintiff's claim for tax; and that the plaintiff's lien for tax be enforced against the funds.

So much for the amended bill. The defendants by their answers admit practically all the allegations in the amended bill, other than the conclusions of law as to gains and taxes claimed to be owing. The answers contain two affirmative defenses. The one is that limitations have run against imposition of tax; the other is that in any event the tax on the gains should be no more than 12½ per cent. of such gains as capital net gains; it being shown that by written notice of July 31, 1935, the defendants put themselves on record as electing that any taxes found to be due be computed as taxes on capital net gains.

First, on the sufficiency of the amended bill. In brief, it shows a case where a

testator in 1899 devised real estate to a person for life, with various contingent remainders in fee simple to persons unascertainable during the life tenancy, and where the real estate was sold in 1927 by order of court pursuant to statutory authority, while the life tenant was still alive, with the result that the proceeds of sale passed to a trustee charged with the duty of paying the net income from the fund to the life tenant during her life and holding the capital for the remaindermen designated in the will. The sale having brought more than the value of the real estate on March 1, 1913, which value was greater than the value at the decedent's death, is the trustee thus receiving the proceeds of sale liable under the Revenue Act 1926, 44 Stat. 9, for income tax on the excess of proceeds over the value of March 1, 1913?

By the will the successive estates in the real property were a legal life estate in the widow and contingent remainders in others, including Gertrude Vanderbilt Whitney. There was no trust covering the real property. Upon the sale the proceeds that were received took the place of the real property. Instead of the widow holding the proceeds as legal life tenant, however, the proceeds passed to a trustee whose function it was to pay to the widow the net income for life and on her death to pay over the fund to the remainderman then entitled under the terms of the will. The trust during the widow's life was a requirement under the statute whereby the sale was effected; a requirement put in for the better protection of the remainders. So the widow became equitable life tenant of the proceeds where formerly she had been legal life tenant of the property sold. There was no change in the structure of the remainders. They had been contingent remainders at law, and after the sale they were still contingent remainders at law of the same quality. There was of course the fact that the property to which the remainders attached was personalty in lieu of realty.

So far as concerned the respective rights of life tenant and remainderman, the proceeds of sale, including gain, were capital and nothing else. The New York statute, by means of which the realty was sold, provided in express terms that the proceeds of sale be held for the remainderman, and this would have been the result even without specific provision. Matter of Kernochan, 104 N.Y. 618, 11 N.E. 149. But it does not follow that a gain realized out of the sale, capital between life tenant and remainderman, did not constitute taxable income so far as concerned the right of the United States to collect income tax. Merchants' Loan & Trust Co. v. Smietanka, 255 U.S. 509, 41 S.Ct. 386, 65 L.Ed. 751, 15 A.L.R. 1305.

In such a situation I am of opinion that under the Revenue Act of 1926 a taxable gain measured by the excess of the proceeds of sale over the value of the realty on March 1, 1913, was realized in 1927, and that the obligation of paying the tax on such gain was laid on National City Bank as fiduciary.

By section 212 of the act, 44 Stat. 23, net income in the case of an individual means gross income as defined in section 213, 44 Stat. 23, less deductions allowable under other sections. By section 213, gross income includes gains, profits, and income derived from "sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property." We come then to section 219, 44 Stat. 32, dealing with "estates and trusts," and providing in part as follows:

"Sec. 219. (a) The tax imposed by Parts I and II of this title shall apply to the income of estates or of any kind of property held in trust, including—

"(1) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust;

"(2) Income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of an infant which is to be held or distributed as the court may direct;

"(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; and

"(4) Income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated.

"(b) Except as otherwise provided in subdivisions (g) and (h), the tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary. The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212."

The "income" referred to in this section includes gains made out of the sale of property held as capital in estate or trust. Merchants' Loan & Trust Co. v. Smietanka, supra. The point to which counsel have devoted their argument is whether the case comes within the clause in subdivision (a) (1), "income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests." The defendants say that it cannot fall within this clause because prior to the sale there was no trust. But the trust came into existence instantly on the sale, and the gain made out of the sale was literally one held "in trust for the benefit of * * * persons with contingent interests." I think that the case was comprehended in that clause. The point is not of controlling importance, however, for in any event the gain was comprehended in the next succeeding clause in subdivision (a) (1), "income accumulated or held for future distribution under the terms of the will or trust." Under this clause there is no requirement that the property out of the sale of which a gain arises must have been property held in trust at any time. It amply covers a gain made out of the sale of property where the gain is one not immediately distributable, but is one "held for future distribution under the terms of the will." Here the gain was one realized in 1927 for distribution to the contingent remaindermen under the terms of the will of Cornelius Vanderbilt whenever the life estate should fall in. If it be argued that it is not the income of an "estate" as referred to in the opening sentence of the section, there are two answers. The first is that it need not be; the word "including" being a term of enlargement. The second is that it was a gain belonging to contingent remainders, and contingent remainders are "estates" and commonly known as such. 4 Kent's Commentaries, 14th Ed., p. 197; New York Real Property Law, §§ 36–38.

The plan of Congress in enacting section 219 was to make taxable all gains, profits, and income realized from property held under estates or trusts and to compel the fiduciary to pay the tax on any gain, profit or income not paid over currently to the persons beneficially interested. The section follows corresponding provisions in all revenue acts from the act of 1916 down. The present case comes within the plan, and the language used, as already pointed out, is broad enough to cover the transactions described in the amended bill and to impose tax liability on the defendant National City Bank. By paragraph (b) of the section, the duty of paying the tax on the net income of "the estate or trust" is placed on the fiduciary; meaning "any person acting in any fiduciary capacity for any person," section 200 (b), 44 Stat. 10, in this instance National City Bank.

The defendants rely on United States Trust Co. v. Lynch, 267 N.Y. 22, 195 N.E. 537, where the identical transaction was discussed with reference to the income tax imposed by the state of New York. But there was no holding that the New York income tax could not be collected. The holding was much narrower; that the tax could not be collected from United States Trust Company as executor of the estate of Cornelius Vanderbilt, the court pointing out that National City Bank was made a party "only in its character as depositary of income claimed to have been realized by others before its deposit with that appellant." 267 N.Y. 22, at page 27, 195 N.E. 537, 539.

The discussion thus far has dealt primarily with the gain made in 1927 on the sale of the realty. What has been said applies equally, however, to the gain made in 1926 on the purchaser's forfeiture of the $500,000 paid on account of a prospective purchase.

I agree with the defendants that there was no tax liability on the life tenant as fiduciary or on the referee who made the sale, and that no synthetic taxpayer can be concocted out of a trinity of life tenant, referee, and trustee. To the extent that the amended bill represents an effort to hold National City Bank liable as "transferee" of any such taxpayer single or composite, no cause of action is stated. But a cause of action against National City Bank as fiduciary of an estate or trust under Section 219 is stated in the amended bill, both as to a taxable gain of $500,000 in 1926, and as to a taxable gain of $2,787,838.47 in 1927.

Second, as to the answers. The partial defense that the gains are taxable at no more than the 12½ per cent. rate permissible for capital net gains under section 208 is insufficient. The point has no bearing on the $500,000 gain in 1926, since that gain came from a forfeited deposit on an attempted sale and not from a sale or exchange of capital asset. After that gain was received, the persons with estates in the realty still had the realty. The $2,787,838.47 gain of 1927, however, was doubt-

less a capital gain. But by section 208, 44 Stat. 19, it was for the taxpayer to elect whether to pay at the normal and surtax rates or at the capital net gain rate; and by regulation of the commissioner the election was to be made in the taxpayer's filed return. Regulations 69, article 1652. The regulation was one within the authority of the Commissioner and has the force of law. In this case no election of the rate for capital net gains was made in any income tax return. The so-called election was made in 1935 by written notice, and was of no significance.

It remains only to consider the other defense pleaded; the statute of limitations. The answers allege that on January 27, 1928, National City Bank as trustee appointed by the court duly filed a fiduciary income tax return for the year 1927; that no assessment of tax was ever made relative to the alleged gains; that suit was therefore already barred by limitations on March 14, 1931, when suit was brought.

The 1926 act fixed three years from the filing of the return as the period within which the tax might be assessed or suit to collect tax without assessment might be commenced, section 277, 44 Stat. 58, with the proviso that, in the case of a false or fraudulent return with intent to evade tax or of a failure to file a return, assessment or suit for collection might be resorted to at any time. Section 278, 44 Stat. 59.

 The facts pleaded show no defense in respect to the first cause of action, that for the $500,000 gain received in 1926. For all that appears, no fiduciary return was filed for 1926, and the three-year period never started to run. But a valid defense is stated as to the second cause of action, for the gain of $2,787,838.47 in 1927. The answers show that more than three years before suit National City Bank filed a fiduciary income tax return relative to the trust in question for the year 1927, and that no assessment of tax was ever made. The fact that the filed return made no report of this gain, a fact to be taken as true by the defendants' admission of the allegation in the amended bill that no one of the persons concerned reported the transaction in a tax return, does not of itself take the case out of the general provision barring suits brought without assessment more than three years after filing of a return. If the plaintiff can prove on the trial that for some reason not evident on the pleadings the statute of limitations did not run

or was tolled, the defense will not be ultimately effective. The facts pleaded in the answers, however, are on their face a sufficient defense for the defendant National City Bank on the second cause of action. Griffiths v. Commissioner, 7 Cir., 50 F.2d 782. They are also sufficient for the defendant Gertrude Vanderbilt Whitney on the second cause of action. She is sued as transferee, and the period of limitation for commencing suit against a transferee is the same as for commencing suit against the original taxpayer under the 1926 Act. Section 280 (a), 44 Stat. 61. The additional period allowed by section 280 (b) applied only to assessments against transferees and has no operation here. See United States v. Updike, 281 U.S. 489, 493, 494, 50 S.Ct. 367, 368, 74 L.Ed. 984.

The defendants' motion to dismiss the amended bill for insufficiency will be denied. The plaintiff's motion to strike the defenses in the answers will be granted as to the defense invoking the tax rate on capital net gains. It will also be granted as to the statute of limitations pleaded as a defense to the first cause of action in the amended bill; it will be denied as to the defense of the statute of limitations as a defense to the second cause of action.

## Supplemental Opinion.

Most of the issues raised in this case were disposed of when motions addressed to the pleadings were decided last summer. It was then ruled that each of the two counts in the amended bill stated a good cause of action for income tax liability against National City Bank as fiduciary of an estate or trust; the first count for income of $500,000 in the year 1926; the second count for income of $2,787,838.47 in the year 1927. The reasons for that conclusion were given in the opinion then rendered and need not be repeated. At the same time certain defenses interposed by the defendants were stricken as insufficient on their face. One defense to the count for the 1927 tax, however, was not stricken. That defense was the statute of limitations. The answers pleaded that National City Bank as trustee of the proceeds of sale had filed on January 27, 1928, a fiduciary income tax return for the year 1927, and that no suit had been commenced or assessment made within three years. This defense was held sufficient on its face, and the question whether it should ultimately prevail was left to be decided at the trial.

On the trial it was evident that the facts pleaded in the amended bill were either admitted by the defendant's answers or proved by a stipulation of facts offered in evidence. The only substantial issue left to be tried was whether collection of the tax for 1927 was barred by limitations, and here again all the facts were proved by stipulation of the parties. On January 27, 1928, National City Bank as trustee of the trust comprising the proceeds of sale of the real estate filed with the proper collector a "fiduciary return of income" for the year 1927, on form 1041. This return was not before the court when the motions relative to the pleadings were decided. The return listed as the only item of income $5,130.71 received as interest on bank deposits, notes, and bonds; with deduction of $3,028.68 for trustee's commissions, net income was shown at $2,102.03; and the return stated that such net income had been paid over to the beneficiary for life. This suit was commenced March 14, 1931, without prior assessment and more than three years after the return on form 1041 was filed.

By the Revenue Act 1926, § 277 (a) (1), 44 Stat. 58, the period for assessment of income tax or for commencement of suit without assessment is three years "after the return was filed." By section 278 (a), 44 Stat. 59, it is provided that, "in the case of a false or fraudulent return with intent to evade tax or of a failure to file a return," the tax may be assessed or suit to collect may be begun at any time.[1] The plaintiff concedes that the case is not one of false or fraudulent return with intent to evade tax; the defendant omitted to report income from the sale of the real estate because in good faith it believed that no taxable income had been realized on the sale. So it comes down to whether there was "a failure to file a return," within the meaning of section 278 (a).

In approaching the question we bear in mind that by section 219 (b) of the 1926 act, 44 Stat. 32 the tax on undistributed trust income is laid on the fiduciary, while by section 219 (b) (2), 44 Stat. 33, the tax on distributed income is laid on the beneficiaries; that by section 225, 44 Stat. 37, the fiduciary is to make a return for every estate or trust with net income over $1,500 or gross income over $5,000; that by section 1115, 44 Stat. 117, returns shall be made according to forms and regulations prescribed by the Commissioner; and that by article 421 of Regulations 69 the Commissioner had made the following requirement for returns by fiduciaries for the year in question: "A return is required on Form 1040 with respect to any taxable net income of the estate or trust computed in accordance with section 219 (b) and a return on Form 1041 with respect to any income deducted under section 219 (b) (2) or (3). If a portion of the income of the estate or trust is retained by the fiduciary and the remainder is distributable or distributed to beneficiaries, both Forms 1040 and 1041 will be required."

By law, therefore, the trustee here was bound to pay income tax on the income retained by it, the profit on the sale of the real estate held for the ultimate remainderman, while it was not to pay the tax on the current income distributed to the life tenant. And by regulation having the force of law the trustee was required to file two returns; a return on form 1040 for the retained income, on which return the tax payable by the trustee should have been computed in the space provided for computation of tax, and a return on form 1041 for the distributed income, on which return no tax was to be computed by the trustee, but which was to show the amount of income received by and taxable against the beneficiary. In fact, only the latter return was filed.

It is plain that when Congress declared in section 277 (a) (1) that "the amount of income taxes imposed by this Act shall be assessed within three years after the return was filed," and that no suit for collection without assessment should be begun after that period, the "return" referred to was a return of income tax imposed by the act. The words "income taxes imposed by this Act" having already appeared in the opening line, the sense is clear without a repetition of these words after the words "the return." A return that was a mere information return, giving informa-

---

[1] Section 277(a) (1). "The amount of income taxes imposed by this Act shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period."

Section 278 (a). "In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."

tion concerning the tax payable by some one else, could not have been included. This being the case, no broader meaning may be attached to the word "return" in the correlative section 278 (a), to the effect that in case of "failure to file a return" the tax may be assessed or sued for at any time. The meaning is that in the event of failure to file a return. of income tax imposed by the act, assessment or suit may be resorted to at any time. It follows that where a trustee who should have filed a return of income tax imposed on him because of undistributed trust income (form 1040), merely filed an information return showing income distributed to others and taxable against them (form 1041), the case is one of "failure to file a return," so far as the tax on the undistributed income is concerned, and suit against the trustee to collect the tax may be commenced at any time.

These conclusions are unavoidable under Commissioner v. Roosevelt & Son Investment Fund, 2 Cir., 89 F.2d 706. There the court took the view that an information return filed on form 1041, merely detailing information regarding income distributed to beneficiaries, "was not the return of a tax at all," and that such a return was not the "return" mentioned in 275 (a) of the 1928 Act, 26 U.S.C.A. § 275 note, which corresponds to section 277 (a) (1) of the 1926 act, as starting the period of limitation against assessment or suit to collect income tax. True, the decision went off on another point, but the court indicated clearly that the case should be treated as a "no-return" case for purpose of limitations.

The defendants rely on a line of cases in the Board of Tax Appeals, but in view of the Roosevelt Case, supra, these cases must be deemed overruled.

I am of opinion that the case is one of "a failure to file a return" within the meaning of section 278 (a), and that accordingly the suit was seasonably commenced.

▇ The only other question raised at the trial was whether the $500,000 received as forfeited deposit was income for the year 1926. The defendants urge that it was not income until 1927, for the reason that on the trustee's records this sum was shown in 1926 as a time deposit by the referee in charge of the sale; it was not until 1927 that the trustee opened a formal trust account on its books. But these matters are of no moment. It was in 1926 that National City Bank was appointed trustee, accepted the trust, and received the $500,000, and it was in 1926 that the prospective purchaser's rights in the $500,000 were adjudged forfeited. The $500,000 was a profit received by the trustee in 1926.

On the undisputed facts of the case, the plaintiff has established a tax liability on the part of both defendants. The affirmative defenses are without merit. The plaintiff will therefore have a decree for payment of the taxes, $116,365 for the year 1926, and $688,324.61 for the year 1927, with interest.