May H. Patteson et al., Appellants, v. City of Peoria, Appellee.

Gen. No. 9,845.

Opinion filed February 24, 1943. Rehearing denied April 15, 1943.

JOSEPH A. LONDRIGAN and JAMES E. LONDRIGAN, both of Springfield, and MICHAEL A. SHORE and E. V. CHAMPION, both of Peoria, for appellants.

J. EDWARD RADLEY, Corporation Counsel, and C. E. McNEMAR, Assistant Corporation Counsel, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

Appellants, each claiming to have been a member of the regularly constituted police department of the City of Peoria, filed a complaint in the circuit court of Peoria county against appellee, seeking judgment for the difference between the amounts paid them, respectively, and the sum of $175 each, per month, subsequent to July 13, 1937, the effective date of the Policemen's Minimum Wage Act (Ill. Rev. Stat. 1939, ch. 24, pars. 860a, 860b). The defendant's motion to strike the complaint for an alleged misjoinder and insufficiencies was overruled, an answer was filed, and a motion of the plaintiffs to strike certain portions thereof was likewise overruled. The cause was heard by the court without a jury, and at the close of the testimony for the plaintiffs the court granted the defendant's motion to dismiss the suit and entered judg-

ment in bar of the action, from which judgment the plaintiffs have prosecuted this appeal.

The act under which appellants claim, as in force during the period in controversy, provided:

"Section 1. The word 'policeman' means any member of a regularly constituted police department of a city, village or incorporated town, sworn and commissioned to perform police duties, and includes the chief of police, assistant chief of police, chief of detectives, captains, lieutenants, sergeants, plain clothesmen and patrolmen.

Section 2. The salary to be paid a policeman in any city, village or incorporated town having a population . . . of 25,000 or more but less than 150,000 inhabitants, shall be not less than one hundred seventy-five dollars ($175.00) per month. The provisions of this Act shall not apply to special policemen temporarily employed or commissioned as police officers."

These provisions, without substantial change, were re-enacted in the 1941 revision of the Cities and Villages Act. (Ill. Rev. Stat. 1941, ch. 24, pars. 11—1, 11—2 [Jones Ill. Stats. Ann. 21.1358, 21.1359].) The City of Peoria is within the designated class, and each of the plaintiffs was paid less than $175 per month during the time of her employment.

The complaint consists of six counts, respectively relating to each of the plaintiffs. Each count alleges that the plaintiff named therein "was a member of the regularly constituted police department of said defendant, sworn and commissioned to perform police duties in the said City of Peoria, from the 13th day of July, 1937" to the time when such employment was ended, ranging, in the different counts, from February 15, 1940, to June 9, 1941.

None of the counts names any particular position claimed to have been held by any of the plaintiffs. They claim, and testified they held, during the period

in controversy, the following positions, respectively:
May H. Patteson and Hannah Dunne, policewomen;
Iva Hagerty, police matron; Grace Fleming, night police matron; Elsie M. Dempsey and Irene McDonald, clerks of identification bureau. Each of the plaintiffs introduced in evidence a purported commission issued to her by the board of fire and police commissioners of the city, for the position she claims to have held, and a certified copy of her bond and oath. Most of these documents were admitted in evidence over objection of the defendant.

Plaintiffs also introduced in evidence, over objection, a section of the city ordinances, which provides:

"Section 1455. Department Established. There is hereby established an executive department of municipal government of the City of Peoria, which shall be known as the 'Police Department,' and shall embrace one Superintendent of Police, one Captain of Police, one Lieutenant of Police in charge of Traffic, three Sergeants of Police, one Roundsman, two Police Matrons, three Patrol Operators, one Chief of Detectives, four Detectives, seventy-five Patrolmen, secretary to Superintendent of Police, Superintendent of Identification Bureau, and such other number of Detectives and Police Patrolmen as hereafter from time to time be fixed by the City Council."

Each of the plaintiffs testified to her duties, and the activities performed by her in the discharge thereof. Without detailing them it is enough to say that the title of each position indicates its duties. It was stipulated that for each of the years 1937 to 1941, both inclusive, the appropriation ordinances of the city carried items for two policewomen and two matrons; for the first two years mentioned, appropriations for two clerks of the identification bureau; and for the last two years, appropriations for two clerks of the records department. Appellee preserved an objection to the appropriation ordinances as incompetent, immaterial and not tending to prove the issues. None of the

amounts appropriated was equal to the amounts claimed by appellants.

Appellants claim that the definition of "policeman" in section 1 of the act embraces any member of a regularly constituted police department, commissioned and sworn, and is not restricted to the particular positions thereinafter named; that the words "and includes" are words of enlargement, used in the same sense as "and also"; and that therefore they were members of the police department within the terms of that section. They also claim, as to Iva Hagerty and Grace Fleming, that the Policemen's Minimum Wage Act modifies, by implication, the power of the city council, under the Police Matrons Act (Ill. Rev. Stat. 1939, ch. 24, pars. 837, 838), to fix salaries of police matrons, and that such power is subject to the limitation that such salaries cannot be fixed at less than $175 per month. Appellee takes the opposite position.

Questions which are not determinative of the scope of the statute will first be considered. Appellee urges that the complaint is insufficient in sixteen specified details, and would not sustain a judgment for appellants, had one been rendered in their favor. To set out the several denials and affirmative allegations of the answer would unnecessarily encumber this opinion. All material issues are raised by the allegations of the complaint and answer and the law is that defects in pleadings may be aided by the pleadings of the opposite party, and are thus cured by intendment after verdict. (*Gerke v. Fancher,* 158 Ill. 375, 380, 381; *Cottrell v. Gerson,* 371 Ill. 174, 179.) Furthermore, appellee has not assigned any cross-error as to the denial of its motion to strike the complaint, which is a prerequisite to have that matter considered on review. (*Forest Preserve Dist. of Cook County v. Chilvers,* 344 Ill. 573; *Morgan v. County of Du Page,* 371 Ill. 53, 58.)

Nor is appellee in any position to urge its contention

that there is no proof that the city ever adopted the Fire and Police Commissioners Act (Ill. Rev. Stat. 1939, ch. 24, par. 843, *et seq.*), by a referendum as specified therein, and that there is no proof that any fire and police commissioners were ever appointed in the city. The answer to the complaint affirmatively alleges that the police department of the city consisted of ninety-one members, every one of which was duly appointed by the board of fire and police commissioners of the city, thus recognizing the legal existence of the board. As to Iva Hagerty and Grace Fleming, the answer alleges they were appointed by the then mayor of the city, pursuant to the provisions of the Police Matrons Act.

In *Reed v. City of Peoria,* 318 Ill. App. 271, in which an opinion is this day filed, we held under the provisions of section 12 of the Fire and Police Commissioners Act as amended (Ill. Rev. Stat. 1941, ch. 24, par. 14—11 [Jones Ill. Stats. Ann. 21.1377]) the petitioning firemen were city officials and entitled to the protection afforded by that act.

This leaves for consideration the question of what construction is to be given section 1. The word "include" is obviously the determinative word. The meaning of the word "include" or "including," employed in various statutes and other instruments, has been considered by courts of review in this State and other jurisdictions. An analysis of the cases demonstrates that the issue in each case was not settled by any hard and fast definition of the word used, but by ascertaining and applying the intention of the legislature to the particular statute, under the recognized rules of statutory construction, or the intention of the maker of the specific instrument involved.

*In re Harper,* 175 Fed. 412, cited and relied upon by appellants, involved a provision of the Bankruptcy Act of 1898, ch. 541, par. 1a, that "the word 'debt' shall include any debt, demand, or claim provable in bank-

ruptcy.'' The court said in the opinion: ''It will be noted that some of these definitions in section 1 read 'shall mean' while others read 'shall include.' It was not intended that definitions of words used in the act which read 'shall include' should exclude other meanings or definitions of the word, or limit the ordinary and well understood meanings. It was intended, as the words used plainly indicate, to make sure that they would be held to include what is expressed.''

In *Wyatt v. City of Louisville*, 206 Ky. 432, 267 S. W. 146, it was held that a statute authorizing a city to reconstruct sidewalks, including curbing, at the cost of the abutting property owners, gave power to construct either. Under that statute the intention of the legislature to include either sidewalks or curbing was specifically expressed. The holding is on the same basis as that in the *Harper* case, *supra*. Neither of them has any application here.

In *Jacksonville Terminal Co. v. Blanshard*, 77 Fla. 855, 82 So. 300, also cited by appellants, a statute provided that in condemnation proceedings, ''All costs of proceedings shall be paid by the petitioner, including a reasonable attorney's fee for the defendant to be assessed by the jury.'' In a condemnation suit, which was ultimately dismissed, the court held that the definite article ''the'' related to the jury that determines compensation for the land taken, and limits the right to assess attorney's fees to that particular jury; and that where a suit was dismissed, the defendant could recover attorney's fees only by an independent suit. The court said in the opinion:

''It is not necessary to discuss whether this statute makes attorney's fees part of the costs, as the proceedings in the court below were not conducted upon that theory. We may say, however, that such is not the opinion of this court, and the word 'including' as used in the statute is a word of enlargement, and in this sense is equivalent to 'and.' The compilers of the

General Statutes seem to have taken that view, and at the beginning of the section used the words 'costs and attorney's fees.' "

. Aside from the fact that the words quoted are *dictum,* as clearly disclosed by the opinion, the statute in controversy in the case at bar does not contain any such beginning as the Florida statute. That case is readily distinguishable from this case.

In *Achelis v. Musgrove,* 212 Ala. 47, 101 So. 670, relied upon by appellants, a devise of "my home place, including my dwelling, and the land lying contiguous thereto which I own," was held to include adjacent lands other than the small tract inclosed by a fence around the dwelling. The decision was based on the intention of the testator, determined largely by extrinsic evidence of such intention.

In *Miller v. Citizens' Nat. Trust & Savings Bank,* 1 Cal. App. (2d) 470, 36 P. (2d) 1088, an employee of the bank committed a forgery outside the scope of his employment. In a suit against the employee and the bank, the court had under consideration a section of the Civil Code, which provided:

"Unless required by or under authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his wilful omission to fulfill the obligation of the principal."

On the authority of *Johnson v. Monson,* 183 Cal. 149, 190 Pac. 635, the court held that the word "including," between the two parts of the section, was equivalent to "and also" or "as well as." The *Johnson* case was a suit against a saloon keeper for damages on account of an assault by his bartender, and the court said that, of course, the assault was not an act of negligence, and held that to construe the word "including" as refer-

ring back to negligence would take away all meaning from the words "wrongful acts," since all wrongful acts of negligence were fully covered by the previous expression "negligence"; that furthermore, such a construction would mean that by the code section it was intended, for no apparent reason, to change a universal and an essentially just, elementary rule of the law of principal and agent, and that it did no violence to the language of the section to hold that the word "including" was used in the conjunctive sense, as equivalent to such expressions as "and also" or "as well as." Manifestly, the reason for the construction given that statute cannot be applied in the case at bar.

In *United States v. National City Bank of New York,* 21 F. Supp. 791, relied upon by appellants, the question related to income tax, under section 219(a) of the Revenue Act of 1926, which provided: "The tax imposed by Part I and II of this title shall apply to the income of estates or of any kind of property including" certain types of income specified. The court held that it covered a gain made out of the sale of property held for future distribution, under the terms of the will, to remaindermen. The particular gain was not specifically mentioned in the types of income specified in the statute after the word "including." The court held the gain was taxable, for two reasons: First, that the word "including" was a word of enlargement; and second, that contingent remainders are "estates." The intention to include not only the income "of estates" but also "of any kind of property," being specifically expressed in the act, justified the holding in that case. No such situation obtains here.

The express provision of the Federal Income Tax statutes, sec. 2(b) of the act of 1926 (U.S.C. title 26, sec. 1262(b); sec. 701(b) of the act of 1928 (U.S.C. title 26, sec. 2701(b), that "the terms 'includes' and 'including' when used in a definition contained in this title shall not be deemed to exclude other things other-

wise within the meaning of the term defined," cited in *Von Weise v. Commissioner of Internal Revenue,* C. C. A. 8th, 69 F. (2d) 439, manifestly has no application here. It might well be argued that the Federal statute indicates the rule of interpretation would be otherwise, except for that provision.

In *State Public Utilities Commission v. Monarch Refrig. Co.,* 267 Ill. 528, the refrigerating company did a general warehouse business, operating a cold storage plant for the accommodation of the public, and the question was whether it was a public utility within the meaning of the Public Utilities Act (Laws 1921, p. 702). Section 10 of the act defined a public utility as meaning any corporation, individual, etc., that, among other things, owned or operated any plant, equipment or property for the production, storage, transmission, sale, delivery or furnishing of heat, cold, light, power, electricity or water; or for the storage or warehousing of goods. It further provided that "the term 'warehouse' when used in this act, includes all elevators or storehouses where grain is stored for compensation, whether the property stored be kept separate or not." It was contended that this provision excluded the refrigerating company from the terms of the act, but the court held that the several provisions of the act must be considered together, so as to give effect to the legislative intent. The opinion then calls attention to the fact that the business could well come under the term "public utility" as used in the act, aside from any mention of warehouses therein, and holds that it is obvious that the legislature did not intend to exclude all other warehouses where goods or commodities other than grain are stored for compensation. This case is another example of where the legislative intent was specifically expressed, as including all warehouses, in that portion of the section preceding the provision as to those for the storage of grain. How it tends to uphold the contention of appellants is not apparent.

The decision in *State v. Montello Salt Co.*, 34 Utah 458, 98 Pac. 549, also relied upon by appellants, was reversed by the Supreme Court of the United States in *Montello Salt Co. v. State*, 221 U. S. 452, 55 L. Ed. 810. In that case the Federal enabling statute granted to the State of Utah certain lands for university purposes, and further provided: "That in addition to the above, one hundred and ten thousand acres of land, to be selected and located as provided in the foregoing section of this act, and including all saline lands in said State, are hereby granted to said State, for use of said university, and 200,000 acres for the use of an agricultural college therein." It was claimed, and so held by the Utah Supreme Court, that the word "including" was used in the same sense as claimed by appellants in the case at bar. In reversing that holding, the United States Supreme Court said in the opinion:

"The determining word is, of course, the word 'including.' It may have the sense of addition, as we have seen, and of 'also'; but, as we have also seen, 'may merely specify particularly that which belongs to the genus.' *Hiller v. U. S.* 45 C. C. A. 229, 106 Fed. 73, 74. It is the participle of the word 'include,' which means, according to the definition of the Century Dictionary, (1) 'to confine within something; hold as in an enclosure; inclose, contain.' (2) 'To comprise as a part, or as something incident or pertinent; comprehend, take in, as the greater includes the less . . . the Roman Empire included many nations.' 'Including,' being a participle, is in the nature of an adjective and is a modifier. What, then, does it modify in section 8? Necessarily, we think, the preceding substantive phrase 'one hundred and ten thousand acres of land,' and we have the meaning of the section to be that the saline lands are to be contained in or comprise a part of the 110,000 acres of land. We see no particular awkwardness in the expression of the purpose, and it may well be contended that it needs not for its support the rule of strict construction."

The opinion in that case cites with approval *Brainard v. Darling*, 132 Mass. 218, where it was held that a legacy of $100, "including money trusteed to"' a certain bank, could not be construed as meaning that the sum of $100 was in addition to the sum in the bank. It further cites *Henry v. Henry*, 81 Ky. 342, where a bequest of $14,000, including certain notes was held to mean that the notes formed a part of the $14,000, and were not in addition thereto; also *Neher v. Mc-Cook County*, 11 S. D. 422, 78 N. W. 998, in which it was held that a certain section of the statute, which provided that the sheriff's fees should be $16 for summoning a jury, "including mileage," did not entitle him to mileage in addition to the $16.

*Maben v. Rosser*, 24 Okla. 588, 103 Pac. 674, 676, gives the words "includes" and "including" a similar definition as that used by the United States Supreme Court in the Utah case, *supra*, from the same authority, and refers to Webster's Dictionary as similarly defining "including" in its primary sense. The same words are classified as synonymous with "comprise," as used in a devise of land, in *Miller v. Johnston*, 173 N. C. 62, 91 S. E. 593; and as used in a taxing statute providing that the word "instruments" shall "include" any bond, note, debt, etc., *In re Sheppard's Estate*, 189 App. Div. 370, 179 N. Y. S. 409.

In *Bunge v. Kirchoff*, 251 Ill. App. 119, this court had before it a very similar question of statutory construction as to the meaning of the word "include." Sections 4, 5 and 6 of the Securities Act of 1919 (Laws 1919 p. 351), as originally enacted, respectively provided that Class A, Class B and Class C securities shall "comprise" certain securities enumerated in each class. The 1921 revision of the act (Ill. Rev. Stat. 1941, ch. 121½, par. 96, *et seq.* [Jones Ill. Stats. Ann. 13.01 *et seq.*]) eliminated the word "comprise" in the definition of Class B securities in section 5, and the word "include" was substituted. The word "com-

prise'' in the definition of Class A and Class C securities was continued. It was contended that section 5 as amended was not meant as an exclusive enumeration of securities under Class B. We held that the word "include" in the 1921 revision of the act has the same meaning as "comprise" in the original act, and that taken in connection with the entire act, it was used synonymously with "comprise," and that it was the intention of the legislature to create a fixed and definite classification of securities. In *Farmers' Nat. Bank v. Cook,* 32 N. J. L. 347, 351, cited in our opinion, it is held that the word "comprise" is frequently used synonymously with "include."

It is apparent that none of the cases relied upon by appellants are persuasive in this case. On the other hand, the other cases above mentioned strongly support the contentions of appellee. The definitions of the word "policeman" in the following statutes are also to be noticed.

Section 7 of the Police Pension Act of 1915 (Ill. Rev. Stat. 1941, ch. 24, par. 911 [Jones Ill. Stats. Ann. 100.118]) provides:

"Whenever the word 'policeman,' as used in this Act, appears, the same shall be interpreted and construed to mean and to include the following:

Any person who has been appointed and sworn or designated by law as a policeman and has served in a regularly constituted police department as a policeman, or police patrol driver or police operator, police dog catcher or police kennelman or special investigator or police hostler and a member of the police force thereof."

Section 12 of the Policemen's Annuity and Benefit Fund Act of 1921 (Ill. Rev. Stat. 1941, ch. 24, par. 956 [Jones Ill. Stats. Ann. 100.136]), provides:

"The following words and terms as used in this Act shall mean as follows, respectively:

'Policeman': Any person appointed and sworn or

designated by law as a policeman of such city, and who has served, or is serving, or shall serve in the regularly constituted police department of such city as a policeman, or police woman, or police patrol driver, or police operator, or chief surgeon, or police surgeon, or drill master, or identification officer, or secretary of such police department, or police dog catcher, or police kennelman, or police matron, and member of the police force of such police department.''

The terms ''police woman,'' ''police matron'' and ''secretary of such police department'' are expressly included in the definition of ''policeman'' in the Policemen's Annuity and Benefit Fund Act, while they are all omitted from the definition of the same word in the Police Pension Act of 1915, just as they are from the Policemen's Minimum Wage Act. The right and the intention of the legislature to define a term in one act, specifically for that act, differently from the definition of the same term in other acts, is recognized in *State Public Utilities Commission v. Chicago & West Towns Ry. Co.,* 275 Ill. 555, 569. We must assume that the legislature was cognizant of these differences in definition when the respective statutes mentioned were enacted, and that such differences were designedly incorporated in the different statutes. It is a well settled principle of statutory interpretation that the enumeration of certain things implies the exclusion of all other things. (*People v. Collins,* 351 Ill. 551, 555; *Blakeslee's Storage Warehouses, Inc. v. City of Chicago,* 369 Ill. 480, 483.) If the legislature had intended that the positions held by appellants should be embraced in the Policemen's Minimum Wage Act, those positions would have been expressly mentioned therein. Their omission is indicative of the legislative intent to exclude them (*People v. Collins, supra*), particularly as the Policemen's Annuity and Benefit Act has been continued in force from its enactment in 1921 to the present time.

As was said in *Morgan v. City of Rockford,* 375 Ill. 326, 329: "The Minimum Wage law deals solely with the subject of salaries of policemen and the General Assembly has, in unambiguous terms, ordained that those described in section 1 and who do not fall within the exception of the second section, are eligible to the benefits of the statute." In *People v. City of Springfield,* 370 Ill. 541, 558, the opinion says: "The language of the act is clear and unmistakable. It has no ambiguity and there is no room for questioning the meaning of its terms. Cases cited by appellants where the terms of a statute were susceptible of different constructions, because vague or indefinite, have no application here."

Under the history of the legislation on the subject, and the authorities above mentioned and discussed, our conclusion is that the word "includes" was meant to be given the same meaning as "comprises," and that the legislature intended to create a fixed and definite class, excluding all those not specifically named.

What is said above applies to police matrons as well as to the other positions in controversy. In addition thereto, the Police Matrons Act, *supra,* as in force during the period in controversy, provided that the salary to be paid them shall be fixed annually by the council or president and board of trustees as the case may be, out of the funds to be duly appropriated for that purpose. This statute was in force continuously from its enactment in 1897 until its re-enactment, without any substantial change, in the 1941 revision of the Cities and Villages Act (Ill. Rev. Stat. 1941, ch. 24, par. 9— 51 [Jones Ill. Stats. Ann. 21.1298]). Appellants admit that the Policemen's Minimum Wage Act does not purport to repeal the Police Matron's Act, but they argue that if there are any inconsistencies between the two acts, it will be presumed the legislature intended to repeal the Police Matron's Act. It is well settled that the repeal of laws by implication is not favored, and

it is only where there is a clear repugnance between two laws and the provisions of both cannot be carried into effect that the later law must prevail and the former be considered repealed by implication. Where two statutes are enacted which have relation to the same subject, the earlier continues in force unless the two are clearly inconsistent with and repugnant to each other, or unless in the later statute some express notice is taken of the former plainly indicating an intention to repeal it, and where the two acts are seemingly repugnant, they should, if possible, be so construed that the later may not operate as a repeal of the former by implication. It is not enough to justify the inference of repeal that the subsequent statute covers some, or even all, of the questions covered by the former. There must be an irreconcilable repugnancy. (*Kizer v. City of Mattoon,* 332 Ill. 545, 548, 549, and cases cited; *People v. United Medical Service, Inc.,* 362 Ill. 442, 450; *City of Geneseo v. Illinois Northern Utilities Co.,* 378 Ill. 506, 529.)

Continuing the Police Matron's Act in force as above pointed out is another strong factor which demonstrates that the legislature did not intend to include police matrons in the act in controversy. Under the construction we have adopted there is no inconsistency or repugnancy between the two acts.

The judgment of the circuit court was correct and is affirmed.

*Judgment affirmed.*